OPINION OF THE COURT
Paul Crapsi, J.
In this proceeding, petitioner seeks to establish that Scott B., who died on January 5, 1991, is the father of Kelsey 0., born out of wedlock to petitioner on May 10, 1991.
*53 BACKGROUND AND PRIOR PROCEEDINGS
A paternity petition was filed, by Ms. O. in May 1993, naming as respondent "The Estate of Scott W. B.” Since no estate proceedings had been filed, there was no executor or administrator on whom service could be made and the petition was dismissed without prejudice in July 1993.
A new petition was filed on October 26, 1995. Irene B. (mother), Bruce B. (father) and Bruce B., Jr. (brother), as decedent’s next of kin, were named respondents. At the same time, petitioner sought an order directing respondents to submit to paternity parentage testing. Respondent filed a cross motion requesting an order of dismissal.
It was the decision of this court, inter alia, that respondents were proper parties to this proceeding, since no letters of administration had been issued, and they were in the best position to contest petitioner’s application. (Matter of Anne R. v Estate of Francis C., 167 Misc 2d 343 [Fam Ct, Queens County 1995]; Matter of Henry v Rodd, 95 Misc 2d 996 [Fam Ct, Queens County 1978].) They were not, however, required to submit to paternity parentage testing. In addition to the reasons given on the record in court on February 9, 1996, petitioner’s request for a blood test was premature at that stage of the proceeding. Petitioner’s request was denied, and respondents’ cross motion to dismiss was likewise denied.
A Law Guardian was appointed to represent the interests of the child, and a hearing was thereafter conducted on May 20, 21 and 23, 1996.
STATUTE
Petitioner brings this proceeding pursuant to Family Court Act § 519, which provides as follows:
" § 519. Effect of death, absence or mental illness of putative father
"If, at any time before or after a petition if [sic] filed, the putative father dies, or becomes mentally ill or cannot be found within the state, neither the proceeding nor the right to commence the proceeding shall necessarily abate but may be commenced or continued by any of the persons authorized by this article to commence a paternity proceeding where:
"(a) the putative father was the petitioner in the paternity proceeding; or,
"(b) the putatiye father acknowledged paternity of the child in open court; or
*54 "(c) a blood genetic marker test had been administered to the putative father prior to his death; or,
"(d) the putative father has openly and notoriously acknowledged the child as his own.”
This provision overrules the common-law doctrine that a purely personal action abates when one of the parties dies. The statute was enacted to prevent false and opportunistic claims from being made against the putative father’s estate while permitting legitimate claims to proceed. The statute should not be given a broad reading to prevent abatement of a paternity proceeding against a deceased putative father where none of the statute’s four conditions are met. (Matter of Commissioner of Social Servs. v William C, 147 Misc 2d 974 [Fam Ct, NY County 1990].)
Petitioner relies on Family Court Act § 519 (d), and alleges that decedent "openly and notoriously acknowledged the child as his own” prior to his death on January 5, 1991.
ISSUE
Before determining the question of paternity, the court must decide whether petitioner has met her burden of proving open and notorious acknowledgment of the child by Scott B. so that she is permitted to maintain this proceeding despite the death of the putative father. (Family Ct Act § 519 [d]; Matter of Anne R. v Estate of Francis C., supra, at 345; North v Estate of Brooks, Fam Ct, Ulster County, Nov. 19, 1993, 27 Fam L Rev No. 3 [Sept. 1995].)
STANDARD OF PROOF
It is well established that the ultimate issue of paternity must be demonstrated by clear and convincing proof. (Matter of Commissioner of Social Servs. v Philip De G., 59 NY2d 137, 141-142 [1983].)
It is less clear, however, what standard of proof applies to the threshold issue of open and notorious acknowledgment. There is authority that petitioner is required to demonstrate this by a fair preponderance of the evidence. (Matter of Anne R. v Estate of Francis G, supra, at 346.) Matter of Anne R. appears to be the only case to explicitly address this matter. The court in Matter of Anne R. enunciates the "fair preponderance” standard as a given, without discussion or recitation of any authority therefor. For reasons hereinafter set forth, I must respectfully disagree with this determination.
Section 517 of the Family Court Act provides as follows:
*55 "§ 517. Time for instituting proceedings
"Proceedings to establish the paternity of a child may be instituted during the pregnancy of the mother or after the birth of the child, but shall not be brought after the child reaches the age of twenty-one years, unless paternity has been acknowledged by the father in writing or by furnishing support.”
The acknowledgment required by Family Court Act § 517 must be "a clear acknowledgment about which there is no doubt or equivocation.” (Schuerf v Fowler, 2 AD2d 541, 542 [1st Dept 1956], appeal dismissed 3 NY2d 987.) "[T]he acknowledgment must be clear and unequivocal. The father must acknowledge and recognize the child as his own without doubt, coercion or mental reservation.” (Matter of Dolores D. v Mario N. D., 69 Misc 2d 689, 690 [Fam Ct, NY County 1972].)
To avoid the Statute of Limitations, it must be established by clear and convincing evidence that the father has acknowledged paternity. (Matter of Vicki B. v David H., 57 NY2d 427 [1982].) The written acknowledgment required by Family Court Act § 517 need not be in any precise words, "but it should be clear and definite on the face of the writing or in its context.” (Schuerf v Fowler, supra, at 542.)
Examples of such acknowledgments include a letter from a putative father to the mother which stated "I love you and our baby” (Matter of Anonymous v Anonymous, 25 AD2d 350 [2d Dept 1966], affd 19 NY2d 840, mot to amend remittitur granted 20 NY2d 742); a hospital record of a consent to perform an operation on a child, signed by the putative father as "nearest relative” (Matter of Green v Blue, 28 AD2d 628 [3d Dept 1967]); the putative father’s signature on the child’s report cards in the spaces indicated for the parent’s signature along with a letter to the petitioner’s sister stating that he loved the petitioner and his babies very much and that he wanted to see the child in question. (Matter of Dolores D. v Mario N. D., supra.)
Sections 517 and 519 of the Family Court Act are in pari materia and must be construed together. (McKinney’s Cons Laws of NY, Book 1, Statutes § 221.) Since Family Court Act § 517 requires the father’s written acknowledgment to be proven by clear and convincing proof, a like standard of proof should be applied to the open and notorious acknowledgment required by Family Court Act § 519 (d).
decision
At the hearing, proof was adduced on the issue of open and notorious acknowledgment as well as the ultimate issue of *56 paternity. On further reflection and consideration of the case law, the better practice would have been to conduct a pretrial hearing solely on the first issue to determine whether petitioner had standing to maintain these proceedings. (Matter of Anne R. v Estate of Francis C., supra; North v Estate of Brooks, supra.) Having conducted a hearing on all issues, I will consider the proof on the issue of standing before addressing the ultimate issue of paternity.
Following Scott W. B.’s death, petitioner applied for Social Security benefits for the child. William F., a friend of decedent, completed a questionnaire for the Social Security Administration (petitioner’s exhibit 3) in January 1992. In the questionnaire, Mr. F. indicates that decedent openly acknowledged paternity of petitioner’s unborn child in November 1990. When called to testify, Mr. F. denied that decedent ever acknowledged paternity to him. When confronted with his signature on exhibit 3, he testified that he never read the form. The most favorable characterization of this testimony would be disingenuous. Since this witness was willing to lie under oath, he may also have falsified the information contained in exhibit 3, and little weight can be accorded this document.
Moreover, Mr. F.’s testimony was consistent with that of two other credible witnesses, Timothy H. and Frederick Z., both of whom were close friends of decedent. Both Mr. H. and Mr. Z. testified that when decedent was questioned about petitioner’s pregnancy, he avoided any discussion, changed the subject and failed to acknowledge paternity.
Deborah Ann S. testified that on Thanksgiving Day 1990, she attended a party where decedent put his hand on petitioner’s stomach and said, "This is my baby.” Petitioner, however, testified that she did not recall the incident or decedent’s comment. Petitioner testified that following the Thanksgiving Day party, she had a long discussion with decedent at her home, when decedent told her that if he were the father, he wanted to be responsible. This is consistent with petitioner’s testimony that when she initially advised decedent of her pregnancy, he responded with a question, "Am I the father?” These statements clearly demonstrate mental reservations on the part of decedent.
There was conflicting testimony from several credible witnesses regarding a family meeting held in October 1990, at the home of respondents. Present at this meeting were petitioner, decedent and their respective parents. Petitioner’s mother testified that she asked decedent whether there was any doubt *57 in his mind, that he was the father and decedent replied that . there was no doubt in his mind. Decedent’s mother and father testified that they did not recall hearing any such exchange. Petitioner, petitioner’s father and decedent’s father all testified that when asked if he was the father, decedent responded that he could be, i.e., he neither admitted nor denied paternity. Again, this testimony is contradictory at best.
In summary, I find that petitioner has failed to demonstrate by the requisite standard of proof open and notorious acknowledgment of the child by the decedent, as required by Family Court Act § 519 (d). Accordingly, she lacks standing to continue this proceeding, and there is no need to consider the ultimate issue of paternity, which in any event was not clear and convincing. The petition is dismissed.